**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on May 02, 2007, which may be different from its entry on the record.**

**IT IS SO ORDERED.**



**Dated: May 02, 2007**

**Arthur I. Harris
United States Bankruptcy Judge**

___

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 04-14158 |
| | ) | |
| MICHELLE BARANY, | ) | Chapter 7 |
|    Debtor. | ) | |
| | ) | Adversary Proceeding No. 06-1804 |
| MICHELLE BARANY, | ) | |
|    Plaintiff, | ) | Judge Arthur I. Harris |
| | ) | |
| v. | ) | |
| | ) | |
| BALDWIN-WALLACE COLLEGE, | ) | |
|    Defendant. | ) | |

MEMORANDUM OF OPINION[1]

Before the Court are the parties' cross motions for summary judgment. The primary issue is whether an extension of credit by the defendant to the plaintiff-debtor is excepted from discharge under former 11 U.S.C. § 523(a)(8). For the reasons that follow, the plaintiff's motion for summary judgment is granted in part and denied in part, and the defendant's motion for summary judgment is

---

[1] This opinion is not intended for official publication.

denied. The plaintiff's debt for unpaid tuition, fees, and other charges was discharged by the Court's July 14, 2004, discharge order. The plaintiff's claim for sanctions and/or injunctive relief is denied.

## JURISDICTION

Proceedings to determine dischargeability are core proceedings under 28 U.S.C. § 157(b)(2)(A). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c), as made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, provides that a court shall render summary judgment:

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving the court for summary judgment bears the burden of showing that "there is no genuine issue as to any material fact and that [the moving party] is entitled to judgment as a matter of law." *Jones v. Union County*, 296 F.3d 417, 423 (6th Cir. 2002). *See generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party meets that burden, the nonmoving party "must

identify specific facts supported by affidavits, or by depositions, answers to interrogatories, and admissions on file that show there is a genuine issue for trial." *Hall v. Tollett*, 128 F.3d 418, 422 (6th Cir. 1997); *see*, *e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). In determining the existence or nonexistence of a material fact, a court will view the evidence in a light most favorable to the nonmoving party. *Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

"The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.*; *accord In re AutoStyle Plastics, Inc.*, 269 F.3d 726, 735 (6th Cir. 2001) (citing several cases reaching same conclusion).

FACTS AND PROCEDURAL BACKGROUND

The following facts are not in dispute. Plaintiff-debtor Michelle Barany attended classes at Baldwin-Wallace College ("the College") from May 1999

3

through early 2001. Before the start of classes in May 1999, the debtor executed a "Revolving Credit Agreement" ("the Agreement"), in which the College agreed to extend to the debtor,

> credit from time to time during the period beginning on the date the [debtor] . . . is accepted by the College as a student and continuing so long as the [debtor] remains a student of the College, for the payment of fees imposed upon the student by the College for all goods and all services obtained at or through the College.

The College "reserve[d] the right to refuse to extend credit for any reason, to any student at any time." The Agreement further provided that the debtor would incur a finance charge if the total amount due was not paid in full by the payment due date. The Agreement also provided that "This loan is payable on demand." The Agreement nowhere sets forth any amounts – no amount owed by the student, no credit limit, no interest rates, no finance charges – nor does the Agreement appear to obligate the College to permit the debtor to attend classes so long as the debtor abides by the terms of the Agreement. The Agreement was signed by the debtor but contains no signature (or space for signature) for any agent of the College.

      The debtor obtained sufficient financial aid to cover all of her expenses for 1999 and 2000. Before the start of classes in 2001, the College sent the debtor a letter detailing the total costs for the Spring semester. This letter did not include what amount of financial aid, if any, the debtor would receive, so it did not set forth the actual amount that the debtor would have to pay out-of-pocket for the

4

coming semester. The first billing statement was sent to the debtor for the Spring 2001 registration, and payment was due on February 16, 2001. The debtor failed to pay, and subsequent bills were sent to the debtor in March, May, July, August, and September of 2001. In 2003, the College commenced an action in the Berea Municipal Court. The debtor failed to answer, and the College obtained a default judgment. The debtor filed a Chapter 7 petition on April 5, 2004, and obtained a discharge on July 14, 2004. Believing the debt was excepted from discharge under 11 U.S.C. § 523(a)(8), the College proceeded to execute on the default judgment and garnish the debtor's wages in early 2006.

The debtor commenced this adversary proceeding on August 28, 2006. The debtor seeks a determination that the debt to the College is not excepted from discharge under former 11 U.S.C. § 523(a)(8).[2] The debtor also seeks an injunction prohibiting the College from taking any action to collect the debt, including withholding transcripts. After the close of discovery, the parties filed cross motions for summary judgment. The Court is ready to rule.

---

[2] This bankruptcy case was filed prior to October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23 (BAPCPA). Therefore, all references to the Bankruptcy Code are to the Bankruptcy Code as it existed prior to the effective date of BAPCPA.

DISCUSSION

*1. Dischargeability Under 11 U.S.C. § 523(a)(8)*

Former 11 U.S.C. § 523(a) provides in pertinent part:

> A discharge under section 727 . . . does not discharge an individual debtor from any debt —
>
> . . . .
>
> (8) for an educational . . . loan . . . made under any program funded in whole or in part by a . . . nonprofit institution . . . .

The debtor does not assert that excepting this debt from discharge under section 523(a)(8) will impose an undue hardship on herself or her dependants. It is undisputed that the College is a nonprofit institution.

The Bankruptcy Code does not define the term "loan" so courts must infer that Congress meant to incorporate its established meaning. *See In re Merchant*, 958 F.2d 738, 740 (6th Cir. 1992) (citing *N.L.R.B. v. Amax Coal Co.*, 453 U.S. 322, 329 (1981)). The Sixth Circuit has held that the term "loan" in section 523(a)(8) includes extensions of credit when the following factors are present: (1) the debtor is aware of the credit extension and acknowledges the money owed; (2) the amount owed was liquidated; and (3) the extended credit was defined as "a sum of money due to a person." *In re Merchant*, 958 F.2d at 741.[3] The use of the term "loan" in

---

[3] Several Circuits have questioned whether the *Merchant* test requires an agreement prior to or contemporaneous with the debtor's receipt of the credit extended, and these courts have declined to follow *Merchant*, to the extent that the *Merchant* test does not require such an agreement. *See In re Chambers*, 348 F.3d

6

the Agreement is not dispositive. Whether an extension of credit is a "loan" for purposes of section 523(a)(8) depends on the presence or absence of the factors enunciated in *Merchant*, not the label used by one or more parties.

The parties agree that the central issue in this case is whether the amount owed was liquidated for purposes of the *Merchant* test. The debtor argues that the amount could not have been liquidated at the time she executed the Agreement in May 1999 because she did not even need any extension of credit until the Spring 2001 semester. The College argues that the amount was liquidated because the debtor received information regarding the total cost of attendance as well as the amount of financial aid she was to receive. The difference in these amounts, the College argues, was the amount of credit that would be extended.

*Merchant* itself provides little guidance on this issue because Merchant had signed promissory notes evidencing the amount of her indebtedness. 958 F.2d at 741. Fortunately, *In re Feyes*, 228 B.R. 887, 888 (Bankr. N.D. Ohio 1998), does address the liquidated requirement of the *Merchant* test. In that case, the debtor

---

650, 656 n.3 (7th Cir. 2003); *In re Mehta*, 310 F.3d 308, 314 (3rd Cir. 2002); *In re Renshaw*, 222 F.3d 82, 91-92 (2nd Cir. 2000). These courts noted that there was evidence of such an agreement in *Merchant*. *In re Chambers*, 348 F.3d at 656 n.3; *In re Mehta*, 310 F.3d at 314; *In re Renshaw*, 222 F.3d at 91. This Court believes that these cases are consistent with *Merchant* and reads the requirement that the debtor be aware of the extension and acknowledge the amount owed to imply such an agreement.

7

had signed a "Payment Plan Worksheet," which set forth the charges and estimated financial aid for the 1994 academic year and which included a statement that the debtor was responsible for all expenses not covered by financial aid. 228 B.R. at 888. The debtor withdrew before the end of the year, but he enrolled again for the 1995 year. The 1995 worksheet did not contain the same information as the 1994 worksheet. Tuition and fees from 1995 ultimately went unpaid. Finding that the debt for the unpaid tuition and fees was dischargeable, Judge Speer focused on the requirement that under *Merchant* the amount must be liquidated:

> There is no indication in the record that there was an understanding of a liquidated amount between the parties as to the fees for the 1995 fall semester. [The college's] worksheet does not detail tuition for this period. Had [the College] been asserting a claim for the 1994 fees, perhaps the outcome would be different. However, there was no signed document or express agreement as to these particular fees.

228 B.R. at 890. Judge Speer also noted the emphasis the *Merchant* court had placed on the fact that "the debtor had signed forms evidencing the amount of her indebtedness, and that (like a regular student loan) she received her education by agreeing to pay these sums after graduation."

In the present case, the amount that the debtor would come to owe could not have been liquidated at the time the debtor signed the Agreement because the debt was not incurred until the Spring 2001 semester. Until that time, the debtor's financial aid covered the cost of attendance. By Spring 2001, however, the cost of

8

attendance exceeded the debtor's available financial aid. As the College acknowledges, each student receives a letter setting forth the total cost of attendance at the beginning of each academic year, but the letter does not include the student's total out-of-pocket expenses because neither the College nor the student knows exactly what amount of financial aid the student will receive. Here, the College did not extend any credit to the debtor until the Spring 2001 semester, over a year after the debtor signed the Agreement. As in *Feyes*, "there is no indication in the record that there was an understanding of a liquidated amount between the parties as to the fees" for the Spring 2001 semester, only an agreement to extend credit, in some amount, at some time in the future, if necessary.

Had the debt arisen from the debtor's first semester at the College, the College's argument might succeed. But where, as here, neither party can determine the amount owed, the amount is not liquidated such that the debt is a "loan" for purposes of 11 U.S.C. § 523(a)(8). *See*, *e.g.*, *Black's Law Dictionary* (Eighth Ed. 2004) (defining "liquidated" as "settled or determined, esp. by agreement."). Under these circumstances the Agreement did not create a specific loan. The College could have required the debtor to execute a promissory note for the amount due for the Spring 2001 semester, as was done in *Merchant*. Instead, the College allowed the debtor to attend classes on credit, and the College later billed her, listing all her expenses, including unpaid library and parking fines, in a

9

single student account.  Under the Agreement, the College could charge, and the debtor was required to pay, finance charges for unpaid bills.  But "the mere failure to pay a bill when due does not create a loan." *In re Renshaw*, 222 F.3d at 88.  The Agreement signed in 1999 and the extension of credit in 2001 did not create a "loan;" it created a revolving credit arrangement "no different than that of other unsecured creditors." *Feyes*, 228 B.R. at 891.  *See also*, *In re Navarro*, 284 B.R. 727, 732 (Bankr. C.D. Cal. 2002) (signed agreements which specified tuition was due on first day of semester but which failed to state "liquidated sums" did not evidence a loan for purposes of § 523(a)(8)).  As such, the debt is not excepted from discharge under 11 U.S.C. § 523(a)(8), and the debtor's motion for summary judgment must be granted to the extent that she seeks a determination that her debt to the College was discharged.

*2. Sanctions and/or Injunctive Relief*

In her motion for summary judgment, the debtor seeks sanctions on the theory that the College violated the automatic stay.  Even construing the facts in a light most favorable to the debtor, the Court cannot conclude that the College violated the automatic stay.  The College stopped its collection efforts upon the filing of the Chapter 7 petition.  It did not resume these efforts until after the debtor received her discharge.  Under 11 U.S.C. § 362(c)(2)(C), the automatic stay terminates when the debtor receives a discharge.  While the College may have

10

violated the discharge injunction of 11 U.S.C. § 524(a), the plaintiff does not make this argument in her motion for summary judgment. Nor is it clear what relief, if any, would be appropriate for such a violation. *Cf.* Bankruptcy Rule 7008(b) (request for an award of attorney's fees shall be pleaded as a claim in a complaint). And while the debtor's complaint did seek an injunction prohibiting the defendant "from taking any action to enforce the debt owed to Baldwin-Wallace, including withholding of transcripts," it is not clear that an injunction is needed once the Court has declared the plaintiff's debt to the College to be discharged. For example, while the College may have previously acted under the belief that the debt was nondischargeable, it is quite another matter to presume that the College will continue to take such action in contravention of the Court's order finding the debt to be discharged. Should the debtor nevertheless determine that she still wishes to pursue a claim for injunctive relief and/or sanctions for violation of the discharge injunction, the debtor is free to move the Court to alter or amend the judgment under Bankruptcy Rule 9023 and Fed. R. Civ. P. 59(e). Absent such relief being awarded under Rule 59(e), the plaintiff's claim for sanctions and/or injunctive relief is denied.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion for summary judgment (Docket #16) is granted in part and denied in part, and the defendant's motion for

summary judgment (Docket #17) is denied. The plaintiff's debt for unpaid tuition, fees, and other charges was discharged by the Court's July 14, 2004, discharge order. The plaintiff's claim for sanctions and/or injunctive relief is denied.

IT IS SO ORDERED.